United States District Court
Southern District of Texas
**ENTERED**
June 29, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| KBH TRADE, LLC, §<br>§<br>Plaintiff, §<br>v. §<br>§<br>HOLLAND ASTOR ASSOCIATES, LTD, §<br>*et al.*, §<br>§<br>Defendants. § | CIVIL ACTION NO. H-25-4957 |

**MEMORANDUM AND OPINION**

This lawsuit arises out of transactions between KBH Trade, LLC, a Virginia LLC, and Holland Astor Associates Limited, a British company. KBH asserts a variety of claims against Holland Astor, primarily based on breach of contract and fraud. (Docket Entry No. 1-5). Holland Astor has moved to dismiss based on lack of personal jurisdiction, insufficient service of process, and *forum non conveniens*. (Docket Entry No. 4). After reviewing the pleadings, the motion and response, the record, oral argument, and the applicable law, the court grants the motion to dismiss, without prejudice. The reasons for this ruling are set out below.

**I.    Background**

KBH filed this suit in Texas state court in August 2025. (Docket Entry No. 1-5). The petition alleges that on November 21, 2024, KBH and Holland Astor entered into an asset acquisition and client management agreement for the purpose of acquiring and managing a standby letter of credit. (Docket Entry No. 1-5 ¶ 11). KBH alleges that under the agreement, Holland Astor was required to pay KBH $400,000—what KBH calls "the Advance"—at the time of monetization. (*Id.* ¶ 12). As part of the transactions, in November 2024, KBH allegedly wired

Holland Astor $100,000.  (Docket Entry No. 5-2).  The account address Holland Astor provided for the wire transfer was 2800 Post Oak Blvd., Houston, Texas.  (*Id.*).  KBH's petition alleges that Holland Astor did not pay the $400,000 Advance and did not provide any evidence that it even exists.  (Docket Entry No. 1-5 ¶ 13).

On December 16, 2025, the parties also entered into a Deed of Agreement for the purpose of placing the proceeds from the standby letter of credit into a private placement trade platform under a contract between Holland Astor and Merrill Lynch.  (Docket Entry No. 1-5 ¶ 14).  The Deed required the Advance to be paid before any trades were made.  (*Id.* ¶ 15).  KBH alleges that although Holland Astor stated that money was moved as represented and trades had begun on January 27, 2025, the Advance has not been paid.  (*Id.*).

KBH alleges that it exchanged emails and texts with Holland Astor for months about the alleged trades, during which Holland Astor promised that it would provide trade results.  (*Id.* ¶ 16).  On March 11, 2025, Holland Astor provided KBH with a "Remittance Statement" representing that Holland Astor would pay KBH $200,000.  (*Id.* ¶ 17).  KBH alleges that the funds were never transferred.  (*Id.*).  On March 17, 2025, Holland Astor told KBH that it would not receive a results statement.  (*Id.* ¶ 16).  On the same date, Holland Astor also introduced a "hurdle" "whereby the monetization funds were to be repaid in full prior to any trade proceeds being distributed."  (*Id.* ¶ 20).  KBH alleges that this "hurdle" was a breach and constituted fraud.  (*Id.*).  KBH alleges that Holland Astor also stated that it would "be holding both pools of money until such a time" as Holland Astor settled with Merrill Lynch, which KBH alleges was unlawful.  (*Id.* ¶ 22).  KBH alleges that in May 2025, it demanded that Holland Astor mediate the parties' dispute, and that Holland Astor refused to do so.  (*Id.* ¶ 23).

KBH sued Holland Astor and "Does 1 to 10" for breach of contract; common law fraud; fraudulent concealment; breach of fiduciary duty; conversion; constructive trust; and money had and received. (*Id.* ¶¶ 24–64). Holland Astor timely removed and moved to dismiss, asserting (1) that Texas courts lack personal jurisdiction over it, (2) that KBH failed to properly serve it, and (3) that the court should decline jurisdiction regardless under the doctrine of *forum non conveniens*. (Docket Entry No. 4). KBH responded to the motion to dismiss. (Docket Entry No. 5). On February 12, 2026, the court heard oral argument on the motion. (Docket Entry No. 21). The court allowed the parties to supplement the record. (*Id.*). Holland Astor filed the declaration of Geoff Turner, (Docket Entry No. 22), to which KBH objected, (Docket Entry No. 23). KBH's former counsel also filed a declaration. (Docket Entry No. 24).

The motion to dismiss is ripe for ruling.

## II.   The Legal Standard

### A.  The Rule 12(b)(2) standard

When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir. 1994)). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863,

869 (5th Cir. 2000) (quoting *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999)) (additional citations omitted).  The court is not obligated to credit conclusory allegations.  *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir.2001).

### B.  The Rule 12(b)(4) and Rule 12(b)(5) Standards

A party may raise insufficient process or insufficient service of process by moving to dismiss under Rule 12(b)(4) or Rule 12(b)(5).  "Generally speaking, '[a]n objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service,' while a 'Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint.'"  *Gartin v. Par Pharm. Cos., Inc.*, 289 F. App'x 688, 691 n.3 (5th Cir. 2008) (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC.: Civ. 3d § 1353). "The party making service has the burden of demonstrating its validity when an objection to service is made." *Holly v. Metro. Transit Auth.*, 213 F. App'x 343, 344 (5th Cir. 2007) (citing *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)).  "In the absence of valid service of process, proceedings against a party are void." *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design*, 635 F.2d 434, 435 (5th Cir. 1981). "For service to be effective, a plaintiff must comply with the requirements of Rule 4."  *Harris v. HireRight LLC*, No. 3:23-CV-01679-E, 2024 WL 4805375, at *2 (N.D. Tex. Nov. 15, 2024). "In considering a motion to dismiss for lack of service of process, a court may properly look beyond the pleadings to determine whether service was sufficient." *Id*.

### C.  Forum Non Conveniens

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506 (1947).  "A court's authority to effect foreign transfer

4

through the doctrine of *forum non conveniens* 'derives from the court's inherent power, under Article III of the Constitution, to control the administration of the litigation before it and to prevent its process from becoming an instrument of abuse, injustice, or oppression.'" *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 828 (5th Cir. 1993) (quoting referencing omitted). "When an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case.'" *Kempe v. Ocean Drilling & Expl. Co.*, 876 F.2d 1138, 1141 (5th Cir. 1989) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

"[A] forum non conveniens dismissal must be based on the [court's] finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate and available alternative forum." *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cit. 1983). The movant "bears the burden of invoking the doctrine and moving to dismiss in favor of a foreign forum." *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1164 (5th Cir. 1987), *overturned on other grounds*, 490 U.S. 1032 (1989). "This burden of persuasion runs to all the elements of the forum non conveniens analysis." *Id.* The defendants must "demonstrate (1) the existence of an available and adequate alternative forum and (2) that the balance of relevant public and private interest factors favors dismissal." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003).

"In addition to the balancing of relevant private interest factors, the court must give 'the relevant deference' to the plaintiff's choice of forum." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 222 (5th Cir. 2000) (quoting *In re Air Crash*, 821 F.2d at 1165). To meet this

5

relatively high burden, the defendants "must supply the Court with enough information for it to conduct a meaningful inquiry and balance the parties' interests." *Blum v. Gen. Elec. Co.*, 547 F. Supp. 2d 717, 725 (W.D. Tex. 2008).

## III.   Analysis

### A.  Personal Jurisdiction

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and the exercise of such jurisdiction by the forum state is consistent with due process under the U.S. Constitution. *See Delgado v. Reef Resort, Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004). The Texas long-arm statute confers jurisdiction to the limits of due process. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008). Due process permits the exercise of personal jurisdiction over a nonresident defendant when the defendant has "minimum contacts" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Johnson v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson*, 20 F.3d at 647). The plaintiff has the burden of demonstrating facts sufficient to support personal jurisdiction over the defendant.

Minimum contacts can be established through "contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction." *Wilson*, 20 F.3d at 647. A court may exercise specific personal jurisdiction "only when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action."[1] *Gundle Lining Const. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). To determine whether

---

[1] The only question before this court is whether specific personal jurisdiction applies. KBH does not appear to dispute that general personal jurisdiction is inapplicable because Holland Astor does not in fact have the requisite ties to Texas. (*See* Docket Entry No. 4; *see generally* Docket Entry Nos. 5, 7).

specific jurisdiction exists, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Id.* at 205. Even a single contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

"The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Specific jurisdiction requires a "sufficient nexus" between the nonresident defendant's contacts with the forum and the cause of action. *Rittenhouse v. Mabry*, 832 F.2d 1380, 1390 (5th Cir. 1987). As part of the minimum contacts analysis, a court evaluates any contracts, the parties' "actual course of dealing," and the parties' "prior negotiations and contemplated future consequences." *Burger King*, 471 U.S. at 479.

Holland Astor argues that this court lacks personal jurisdiction over it because neither KBH nor Holland Astor has an office in Texas, Holland Astor does not transact business in Texas, and none of the facts giving rise to this case occurred in Texas. (Docket Entry No. 4 at 6). Holland Astor asserts that it is a British company with one physical address: One Canada Square, 37th Floor, Canary Wharf, London, England E14 5AA. (*Id.* at 7 (citing Docket Entry No. 4-1)). Holland Astor points out that the parties' agreement stated that United Kingdom law applies. Holland Astor asserts that the only reason there is a Houston address associated with this case is because after KBH had troubling wire transferring money to Holland Astor's international IBAN/SWIFT account, Holland Astor opened a money-services account with a U.S. routing

7

number to make the payments. (*Id.* at 8). Holland Astor asserts that the Houston address was used only to facilitate the wire transfer of funds to KBH. (*Id.*). Holland Astor asserts that it had no other connection to the address, which belonged to an "unrelated (but friendly to Holland Astor) American business located in Texas." (*Id.* (citing Docket Entry Nos. 4-1, 4-6)).

KBH argues that Holland Astor "intentionally invoked Texas jurisdiction by falsely representing, multiple times, to multiple groups, that it operated from a Houston office at 2800 Post Oak Blvd." (Docket Entry No. 5 at 5). The basis for this argument appears to be that (1) KBH wired money through that address a single time, and (2) in unrelated negotiations with Cradle Capital, a different company, Holland Astor stated that it had a Wells Fargo Treasury Management Account at that address. (*Id.* (citing Docket Entry Nos. 5-1, 5-2)). KBH seemingly does not dispute that Holland Astor does not have a Texas office, but argues that it "fraudulently represented that it maintained business offices" in Houston, which "was a specific, deliberate false claim about Texas itself." (*Id.* at 7, 9). Although its response brief is somewhat inconsistent, KBH does appear to continue to assert that, even if Holland Astor does not have a Houston office, it at least maintains some kind of bank account in Houston sufficient for personal jurisdiction in Texas. (*Id.* at 6–7).

This court does not have personal jurisdiction over Holland Astor as to any of the claims KBH asserts. Although the parties treat them together, the court separately addresses the contract and other claims. "When determining whether a court has personal jurisdiction over a breach of contract claim, 'only those acts which relate to the formation of the contract and the subsequent breach are relevant,' including 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Danzinger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 500 (5th Cir. 2022) (quoting *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489 (5th Cir. 2018)). "[A] plaintiff's unilateral activities do not

constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas." *Id.* (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)). "An exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law." *Id.* (quoting *Moncrief Oil Int'l Inc.*, 481 F.3d at 311).

KBH does not allege (and provides no evidence) that the parties signed the agreement in Texas; that Holland Astor reached out to KBH in Texas; that Holland Astor solicited business in Texas; or that any part of the agreement was performed in Texas. No part of this asset acquisition and client management agreement contemplates performance in Texas. (Docket Entry No. 4-3). The agreement states that it will be governed by the laws of the United Kingdom. (*Id.* at 12). The agreement lists Holland Astor's principal place of business as its London address and was signed on behalf of Holland Astor by Woulter van Hove, who listed the London address as his principal point of contact. (*Id.* at 3, 11, 21). The agreement was signed on behalf of KBH by Howie Ehrlich, who gave a Virginia address. (*Id.* at 11, 21). The agreement lists Holland Astor's bank as located in the United Kingdom and the account address as Holland Astor's London office. (*Id.* at 26). Holland Astor has provided a supporting declaration explaining that it did not solicit KBH to enter the agreement; instead, William Monroe, the Holland Astor representative, negotiated with KBH while Monroe was in Dubai.[2] (Docket Entry No. 22-1).

---

[2] KBH objects to this declaration on the ground that it was submitted by Geoffrey Turner, another representative of Holland Astor, rather than Monroe himself, and so constitutes hearsay. (Docket Entry No. 23). Even if the court did not consider this declaration, KBH has still failed to establish that this court has personal jurisdiction over any of the contract or tort claims.

9

The record shows that the "contract underlying the business transaction was not signed in [Texas] and did not call for performance in [Texas]." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018). Both of KBH's proposed jurisdictional hooks—its own erroneous understanding that Holland Astor had a Texas office and that Holland Astor wired money through a Texas bank account—are insufficient for personal jurisdiction over the contract-based claims. The agreement was not formed in Texas, was not signed in Texas, was not negotiated in Texas, was not breached in Texas, and had no contemplated future consequences in Texas. With no connections between the agreement and Texas, there is not specific personal jurisdiction over the contract claims. *See Danzinger & De Llano, L.L.P.*, 24 F.4th at 500. And, as noted above, most of KBH's arguments about Holland Astor's alleged misrepresentations about its supposed Houston office relate to statements[3] made to a *different* business *after* the parties entered into the agreement. This evidence has scant probative value.[4] (Docket Entry No. 5-1). In sum, the elements required for personal jurisdiction over the contract-based claims are not present.

Nor is there personal jurisdiction over Holland Astor for the tort and related claims. "To establish personal jurisdiction in intentional tort cases, it is 'insufficient to rely on a defendant's "random, fortuitous, or attenuated contacts" or on the "unilateral activity" of a plaintiff.'" *Danzinger & De Llano, L.L.P.*, 24 F.4th at 495 (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* (quoting

---

[3] The client information sheet sent to Cradle Capital stated that Holland Astor had an office in the "United States of America" and provided the same 2800 Post Oak Blvd. address for a Wells Fargo Bank account. (Docket Entry No. 5-1 at 6, 7). The sheet did not state that Holland Astor maintained an office at that address. The copy of the transcript of the phone call involving Cradle Capital also merely indicated that Wells Fargo (not Holland Astor) was in Texas. (*Id.* at 19).

[4] Much of the rest of KBH's supporting evidence submitted in response to the motion to dismiss comes in the form of copies of its own aggressive emails to Holland Astor's attorneys. (*See* Docket Entry No. 5-3).

10

*Walden*, 571 U.S. at 290).  The Fifth Circuit has found no personal jurisdiction in Texas for tort-based claims when the contacts are a contract allegedly formed in Texas and emails concerning work to be performed in Texas.  *See Sangha*, 882 F.3d at 102–03.  The Fifth Circuit has also found no personal jurisdiction for intentional tort claims when none of the alleged conduct occurred in Texas, even if it arguably affected someone in Texas.  *See Danzinger & De Llano*, 24 F.4th at 497–98.

In this case, as discussed above, the only two personal jurisdictional hooks that KBH proposes are (1) that KBH sent some money through a bank account with a Texas address, and (2) that KBH believed Holland Astor had an office in Texas.[5]  KBH's response brief argues that its fraud claims "arise entirely and exclusively from Holland Astor's false representation about maintaining a Houston office," but that argument fails to take the record into account.  (Docket Entry No. 5 at 17).  KBH's complaint alleges fraud based on Holland Astor's failure to pay KBH as promised.   (Docket Entry No. 1-5 ¶¶ 29–64).  The fraud and related claims do not rely on KBH's alleged belief that Holland Astor had a Houston office.  Although KBH argues that Holland Astor's alleged misrepresentation about a Houston office "implicated Texas's regulatory framework, suggesting compliance with state and federal laws applicable to businesses operating in Texas," (Docket Entry No. 5 at 19), that argument is undercut by the parties' agreement, which clearly states that the laws of the United Kingdom would apply to any disputes, (Docket Entry No. 4-3 at 12).

In any event, even assuming that Holland Astor's banking presence in Texas is not limited to the single wire transfer to Europe that was part of the transaction at issue, which is disputed,

---

[5] Holland Astor also points out that Ehrlich received the wiring instructions with the Houston address *after* signing the agreement.  (Docket Entry No. 7 at 12).

Texas law is clear that maintaining a bank account in Texas is not a "transaction of business" in the State. TEX. BUS. ORGS. CODE § 9.251(3). KBH's incorrect belief that Holland Astor had a Texas office does not support personal jurisdiction. KBH's evidence that a different company believed Holland Astor had a Texas presence is also irrelevant; personal jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation," *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432–33 (5th Cir. 2014) (quoting *Walden*, 571 U.S. at 284), not allegations about what unrelated entities or individuals might have believed about a defendant. Ehrlich's supplemental declaration—which states that KBH would not have entered into the agreement if it did not believe that Holland Astor had a U.S. office, which happened to be in Texas—is also insufficient to show minimum contacts. (Docket Entry No. 24 at 2). Personal jurisdiction requires a "meaningful" connection to a forum. KBH has not shown that its belief that Holland Astor had a Texas office is sufficient to support personal jurisdiction over tort and related claims otherwise unconnected to Texas. *See Danzinger & De Llano, L.L.P.*, 24 F.4th at 498; *cf. TV Azteca, S.A.B. De C.V. v. Ruiz*, 490 S.W.3d 29 (Tex. 2016).

The court concludes that it lacks personal jurisdiction over KBH's claims.

**B. Insufficient Service**

Holland Astor also argues that dismissal is warranted because it has not been properly served.[6] (Docket Entry No. 4 at 16). Holland Astor argues that KBH's attempted service through the Texas Secretary of State was "improper and ineffective" because Holland Astor does not maintain a Texas office and does not transact business in Texas, and that even if the statutory predicate for substitute service existed, KBH failed to forward the process to its proper address,

---

[6] Although Holland Astor moves under Rule 12(b)(4), its arguments are better considered as challenges under Rule 12(b)(5). Failure to properly serve also implicates personal jurisdiction.

12

which also makes the attempt at service invalid.  (Docket Entry No. 4 at 17).  In response, KBH

merely states that service was "properly made through the Secretary of State at 2800 Post Oak

Blvd., 41st Floor, Houston, Texas 77056 the same address that Holland Astor itself repeatedly and

voluntarily represented as its U.S. business location."  (Docket Entry No. 5 at 22).

"Under Texas law, the plaintiff must provide the Secretary of State with the correct address

of the 'home or home office' of the defendant."  *Int'l Transactions, Ltd. v. Embotelladara Agral

Regionmanata SA de CV*, 277 F. Supp. 2d 654, 664 (N.D. Tex. 2002) (quoting Tex. Civ. Prac. &

Rem. Code § 17.045(a)).  "Attempted service of process on a foreign defendant is invalid when

the Secretary of State mails a copy of the complaint to an incorrect address."  *Id.* (citing *Petrol.

Workers Union of the Rep. of Mexico v. Arriba, Ltd.*, 882 S.W. 2d 576, 586 (Tex. App. Houston

[1st Dist.] 1994, no pet.)).  The plaintiff bears the burden of "affirmatively showing strict

compliance with the form of the service prescribed in the statute."  *Id.*  In addition, a so-called

*Whitney* certificate—certifying that the Secretary of State has forwarded process to the

defendants—is required to establish that the defendant has been served with process.  *Buffalo

Patents, LLC v. ZTE Corp.*, 605 F. Supp. 3d 917, 925 (W.D. Tex. 2022).

As an initial matter, KBH appears to admit in its briefing that Holland Astor has no Texas

office, but at most an address linked to a bank account.  As explained above, Texas law clarifies

that having a bank account in Texas is not a "transaction of business" in Texas.  KBH has not

explained how serving Holland Astor through the Secretary of State at a Texas address associated

with, at most, a bank account, was proper.  Instead, KBH argues that "[h]aving held out the

Houston location as its U.S. office in its corporate materials and used it as the address for its U.S.

bank accounts, Holland Astor is estopped from denying its validity for the purposes of service."

(Docket Entry No. 5 at 23).  KBH provides no authority for that proposition.  Its failure to

demonstrate that it provided the Secretary of the State with Holland Astor's correct address is dispositive. *See Int'l Transactions, Ltd.*, 277 F. Supp. 2d at 664–65. Setting aside that issue—and the other issues with service that Holland Astor raised—KBH also failed to provide a *Whitney* certificate, which is required to prove proper service. KBH provided evidence that it sent the summons to the Secretary of State, not that the summons was forwarded to Holland Astor. (Docket Entry Nos. 1-4, 1-7). KBH does not respond to this point in its response brief, even though it was raised in Holland Astor's motion to dismiss. (*See generally* Docket Entry No. 5).

The court concludes that service was defective and grants the motion to dismiss for improper service.[7]

### C. Forum Non Conveniens

Finally, the court would also dismiss on the separate and independently sufficient ground of *forum non conveniens*.[8] The "doctrine of *forum non conveniens* proceeds from the premise that in rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *DTEX, LLC v. BBVA Bancomer, S.A.*, 512 F. Supp. 2d 1012, 1019 (S.D. Tex. 2007) (cleaned up) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996). As noted above, to obtain a *forum non conveniens* dismissal, "a party must demonstrate (1) the existence of an available and adequate alternative forum and (2) that the balance of relevant private and public interest factors favors dismissal." *Vasquez v. Bridgetone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003).

---

[7] Although KBH functionally argues that Holland Astor has actual notice of this lawsuit, that is irrelevant to the issue of proper service. *See Burditt v. U.S. Steel Corp.*, Civ. Action No. H-13-0532, 2014 WL 713212, at *1 (S.D. Tex. 2014) ("Actual notice does not cure a defectively executed service.").

[8] The court can rule on the *forum non conveniens* argument even without ruling on the personal jurisdiction issues. *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) ("A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter jurisdiction and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.").

"The private interest factors . . . include: (1) ease of access to evidence, (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of willing witnesses' attendance; (4) if relevant, the possibility of view of promises; [and] (5) all other factors that might make the trial quicker or less expensive." *CFE Int'l LLC v. Schnaas*, No. H-22-3385, 2023 WL 6702486, at *3 (S.D. Tex. Oct. 12, 2023) (quoting *DTEX, LLC*, 508 F.3d 785, 798 (5th Cir. 2007)). "The relevant public interest factors include: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having a trial in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of law; or in application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.'" *Id.* (quoting *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342 (5th Cir. 1999)).

Holland Astor asserts that England is an adequate alternative forum; that the private-interest factors favor hearing the case in England because the agreement and conduct at issue are centered in London, the relevant documents and records are in London, and the key witnesses are in London; and that the public-interest favors hearing this case in England because the parties' agreement calls for the application of UK law and that Texas jurors and this court should not be burdened with a dispute lacking any meaningful Texas ties. (Docket Entry No. 4 at 19–21). KBH does not respond to Holland Astor's *forum non conveniens* arguments or evidence in its response brief. (*See generally* Docket Entry No. 5). Holland Astor's facts are "uncontroverted" for the purpose of analyzing *forum non conveniens*. *See Camejo v. Ocean Drilling & Expl.*, 838 F.2d 1374, 1380 (5th Cir. 1988). Based upon those facts, the court concludes that the public and private interest factors strongly weigh in favor of a *forum non conveniens* dismissal. The court concludes that dismissal on the ground of *forum non conveniens* is appropriate as well.

15

## IV.    Conclusion

For the reasons stated above, the court grants the motion to dismiss.  (Docket Entry No. 4).

This case is dismissed, without prejudice.

SIGNED on June 29, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge

16